## NICHOLS vs. NICHOLS.

1. A party to a collusive divorce is bound by it, and cannot, in another suit for divorce, brought in this state, take advantage of the fraud and illegality of the proceedings upon which such decree was based.

2. The judgment of a court of general jurisdiction in any state in the Union, is equally conclusive upon the parties in all the other states, as in the state in which it was rendered. This, however, is subject to two qualifications : 1. If it appear by the record that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void; and, 2. If it appear by the record that the defendant appeared by attorney, the defendant may disprove the authority of the attorney to appear for him.

3. When a decree of divorce has been acquiesced in for several years, and the plaintiff has again been married, the court will not disturb the decree for the purpose of giving alimony. Such intervention should be based on public policy, but no such reason should suffice where, after the

acquiescence of both parties in the decree for four years, an innocent person has been involved by marriage, and the opening of the decree would involve her in distress, and perhaps disgrace.

On bill for divorce, plea, and replication.

*Mr. Good* and *Mr. N. Perry, Jr.*, for complainant.

*Mr. Ransom*, for defendant.

THE CHANCELLOR.

The complainant, in July, 1872, filed her bill against the defendant, whom she claims to be her husband, for a divorce *a vinculo*, on the ground of adultery, and for alimony and the custody of their three children. The parties were married in Massachusetts, November 16th, 1852. The bill alleges that the complainant, for the ten years next preceding the filing of the bill, had been, and was, when the bill was filed, a resident of Plainfield, in this state, and that the defendant was also a resident of that place up to on or about the 10th of January, 1868, when he left the residence of the complainant at Plainfield, and went to the city of Brooklyn, and that, at the filing of the bill, he was still at the last named place. The adultery is alleged to have been committed with one Alice S. Paul, in April, 1870, at Brooklyn. The defendant was not served with process, but having received notice of the suit, appeared and pleaded that he and the complainant were divorced from the bonds of marriage in Indiana on the 27th day of June, 1868, in a suit in the Court of Common Pleas of the county of Allen, of that state, wherein the complainant appeared and answered. The complainant replied that the decree of divorce was fraudulently obtained; that the court never acquired jurisdiction over the parties to, or the subject matter of, the proceedings, nor over their marriage relations, and that the parties had been, from 1862 up to, and were, at the time of those proceedings, residents of this state;

that the complainant never appeared in person or by attorney in the Indiana court, and never, knowingly, signed any warrant of attorney as set forth in the plea ; that she never knew or heard of the proceedings until after the decree was obtained, and that the proceedings and the decree are fraudulent, illegal, void, and of no effect, and cannot be the ground of a plea in bar to her complaint.

It appears from the evidence, that the parties to this suit lived together as husband and wife in Plainfield, where the defendant was a practising physician, up to January, 1868, when, he having sold out his practice, they broke up housekeeping, and, storing their furniture, went with their children to the residence of his father in Sturbridge, Massachusetts. The complainant did not return to this state until some time in July following. The defendant, after remaining at Sturbridge for about a week, returned to Plainfield, as the complainant says, and as appears otherwise also, to settle up his business. He remained there for about a month, engaged in collecting debts due him, and in packing up his goods, to remove them. He then went to the west, was in Indiana in March, 1868, and claims to have taken up his residence there. From Indiana he appears to have come back to the east, (as he alleges, with the intention of returning again to Indiana,) for the purpose of collecting the debts due him here. He left Indiana about the 1st of April, and from that time to about the 1st of July, when he settled in Brooklyn, appears to have had no particular abiding place. He, however, did not return to Plainfield, nor did he again come to this state to reside.

That he left New Jersey intending to change his domicil, I have no doubt. There had been trouble between him and his wife, arising from alleged familiarities of a grossly improper, not to say criminal, character on her part, with a man then residing in Plainfield. Naturally, under the circumstances, a change of residence would have been desirable. That he did remove his domicil from this state is quite clear. When the proceedings for divorce were instituted in Indiana,

and until their conclusion, he was, if not a resident of that state, a resident of Massachusetts. Neither he nor the complainant resided in New Jersey. Those proceedings are assailed on the ground that the court in Indiana had no jurisdiction over the persons or the subject matter. As to the former, they were both before it. The wife had notice of the suit. The summons had been served on her in Massachusetts, and although such service was technically a nullity, yet it was actual notice. She appeared and answered, by attorney duly appointed. The court had, by statute, jurisdiction over the subject of divorce. It had jurisdiction over the subject matter of the complaint. The statute under which those proceedings were taken, provided that, in addition to the causes of divorce therein specified, a divorce might be granted for any other cause for which the court might deem it proper that a divorce should be granted. The petition laid a proper foundation for the decree. It also appears by the record, that the question of domicil was passed upon, and the petitioner was adjudged to have been at the time of the filing of the petition a *bona fide* resident of Indiana, and to have been such for a year previous thereto. The decree is conclusive in Indiana, and it is so here also. *Cheever* v. *Wilson,* 9 *Wall.* 108 ; *Kinnier* v. *Kinnier,* 45 *N. Y.* 535 ; *Kirrigan* v. *Kirrigan,* 2 *McCarter* 147.

In *Shumway* v. *Stillman,* 6 *Wend.* 447, the court said: "An examination of the cases results in the establishment of the following proposition : that the judgment of a court of general jurisdiction in any state in the Union, is equally conclusive upon the parties in all the other states, as in the state in which it was rendered. This, however, is subject to two qualifications : 1. If it appear by the record, that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void; and 2, if it appear by the record, that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him."

In *Vischer* v. *Vischer*, 12 *Barb.* 640, Hand, J., said: " Whatever may be the rule in respect to divorces granted by the courts in other countries, I am inclined to the opinion that a divorce granted by the courts of one of our sister states, after appearance, or if the parties are domiciled there, after personal service, there being no fraud or collusion, would be conclusive here. And it may be doubted, in case of an appearance and litigation on the merits, whether the proof of the domicil of the parties, or the *lex loci contractus*, or the *locus delicti*, would affect the decree." But it is urged, that in this case the proof is that the petitioner in the suit in Indiana, had not, in fact, been a *bona fide* resident of that state for a year previous to filing the petition, and that therefore the proceedings and decree of divorce were and are a fraud upon the complainant, and upon the laws of this state. I deem it unnecessary to express an opinion on the question whether the decree is conclusive on the subject of the domicil of the petitioner, a point on which the courts have differed widely, for if it be not so, and the fraud be admitted, the complainant in this cause was manifestly a party to it, and cannot take advantage of it. Her letters alone, conclusively show that she not only had knowledge of the institution, but also of the pendency and progress of the suit. They show, too, that she, notwithstanding her denial when testifying as a witness in this cause, executed the warrant appointing an attorney to appear for her, and did so, understandingly and with deliberation. There is also other abundant proof of these facts. It is no answer to suggest that she was induced to execute that instrument by influence of her husband, for she not only offers no proof on this score, but unequivocally and persistently denies on oath, that she executed that paper, or any other paper authorizing an appearance for her, or had any notice of the suit. There is, therefore, no room for such a suggestion. But admitting the suggestion, there is no evidence whatever of the husband's influence over her in this matter, though there is evidence warranting the conclusion that there was an agreement between them, arising out of his

determination to repudiate her for the conduct before alluded to, and her desire to escape publicity in the proceeding, and his willingness to spare her as much as possible, that a divorce should be applied for and obtained in Indiana. She lived during all the time of the progress of those proceedings, at her husband's father's house, and was cognizant of the pendency of the suit. During all that time, up to July 1st, 1868, which was a few days after the divorce was decreed, she was supported by her husband there. She selected an attorney from a list furnished her by her husband, and went with her husband's father and her husband to a justice of the peace, in Spencer, Massachusetts, and before him executed and acknowledged the warrant of attorney. Nor will the fact that the divorce was thus obtained, avail her in this suit. The parties to a collusive divorce are bound by it. *Duchess of Kingston's case,* 20 *How. St. Tr.* 355; *Greene* v. *Greene,* 2 *Gray* 361; *Kirrigan* v. *Kirrigan, supra.*

There is still another consideration. I am satisfied from the evidence that the parties to this suit were not residents of this state when the suit in Indiana was commenced, nor at any time during its progress, nor at the time when the decree was made. No fraud on the law of this state, therefore, was committed by those proceedings or that decree.

Further, the complainant returned to New Jersey in July, 1868, immediately after the divorce was granted. The defendant, at about the same time, settled in Brooklyn. In 1870, he was married to the woman with whom, in the bill of complaint in this cause, the adultery is charged to have been committed, and that alleged adultery is the connubial intercourse between them. By her he has a child, the fruit of their marriage. The complainant filed her bill in July, 1872, four years after the decree of divorce was made, and over two years after her husband had contracted the second marriage. No reason or excuse is given or appears, for this delay in applying for relief against the proceedings of which she complains. In *Singer* v. *Singer,* 41 *Barb.* 139, on a motion to set aside a decree of divorce for collusion, the court

said: " Where the judgment of divorce has been acquiesced in for the period of several years, and the plaintiff has again been married, some better reason than the mere gratification of personal feeling or the desire to obtain a further sum of money from the plaintiff, should be made clearly to appear, before the court would be warranted in granting such an application. The ground on which such an order would be made, would be one of public policy, but no such reason should suffice where, after the acquiescence of both the parties in the judgment for three years, an innocent person has been involved by marriage, and the opening of the judgment would involve her in distress and perhaps disgrace. This reason alone would be sufficient to justify me in denying the motion if there were no other reasons for doing so, and leaving the parties to the consequences of their own acts and agreements after the long delay that has taken place." Here is a longer delay, wholly unexplained. The object of this bill is obviously, merely alimony. Public policy does not require the intervention of this court between these parties. It rather forbids.

The plea is proved. The bill will therefore be dismissed without costs.