## DICKINSON v. DICKINSON.

(Court of Civil Appeals of Texas. San Antonio. May 24, 1911.)

**1. DIVORCE (§ 62*) — JURISDICTION — RESIDENCE.**

Rev. St. 1895, art. 2978, declaring that petitioner for divorce shall be an actual bona fide inhabitant of the state, and shall have resided in the county where the suit is filed for six months, demands an actual and continuous, as distinguished from a legal, residence; and, while it is not necessary that every day or every week must be passed in the county, the bulk of the time must be passed there.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 202–220; Dec. Dig. § 62.*]

**2. DIVORCE (§ 167*) — JURISDICTION — RESIDENCE—JUDGMENT.**

Where a divorce has been obtained without actual, continuous residence by petitioner in the state and county for the required time, it is absolutely void; and, even though jurisdiction appears on the face of the proceedings, the decree may be avoided for fraud in a direct proceeding brought for that purpose.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 533–548; Dec. Dig. § 167.*]

**3. DIVORCE (§ 151*) — TRIAL — NEW TRIAL — BILL OF REVIEW.**

Defendant who had previously resided in New York, Chicago, and elsewhere, claiming to be a resident of N. county, Tex., brought suit for divorce against his wife, who was a resident of Chicago, for cruel and inhuman treatment. The petition was filed April 22, 1909, and defendant served with notice May 11th; the return term being in June and the appearance date June 7th. The case was forced to trial on June 9th; a postponement being denied. Defendant was represented by an attorney who had only been employed two days before the trial, and who knew nothing about the facts. No one testified at the trial except plaintiff, and the jurisdictional as well as the other facts depended on his testimony alone. Judgment for plaintiff having been entered on June 9th, defendant on the 22d moved for a new trial, and on August 8th, during the same term, filed an amended motion supported by an affidavit denying plaintiff's grounds for divorce, and that plaintiff was a bona fide resident of N. county, or had been such for six months prior to the filing of the petition, and alleged facts showing that during the greater part of that time he had resided in Chicago and New York. She also alleged that at the time the divorce was granted negotiations were pending in which plaintiff had agreed to dismiss the proceedings in case defendant instituted divorce proceedings in Chicago, which she had employed an attorney to do, and that she had no knowledge that the divorce had been granted in Texas until she saw a notice thereof in a Chicago paper on June 10, 1909, when she at once telegraphed to her attorney, and he, on June 11th, confirmed the report, and she then employed an attorney in Chicago to make a motion for a new trial, which he did on June 22d, as soon as he could get the record. *Held,* that the court should have treated such motion as a bill of review, and, though filed after the time specified for a motion for a new trial, should have heard and considered evidence offered to sustain the same.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 509–513; Dec. Dig. § 151.*]

**4. DIVORCE (§ 27*) — CRUEL AND INHUMAN TREATMENT—SURVEILLANCE.**

That a wife employed detectives to follow her husband about the country on alleged business trips did not constitute cruel and inhuman treatment entitling him to divorce, if the wife's jealousy, inducing such surveillance, was caused by his matrimonial misconduct.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 62–83; Dec. Dig. § 27.*]

Error from District Court, Nueces County; W. B. Hopkins, Judge.

Action by John T. Dickinson against Sarah Frances Dickinson for divorce. Judgment for plaintiff, and from an order denying defendant's motion for new trial, she brings error. Reversed and remanded.

D. McN. Turner and Kleberg & Neethe, for plaintiff in error. Denman, Franklin & McGown, for defendant in error.

FLY, J. This suit was instituted by defendant in error to obtain a divorce from the plaintiff in error. He alleged in his petition that he was an actual bona fide inhabitant of Texas, and that he had resided in Nueces county for at least six months next preceding the filing of the suit; that he was married to his wife, at that time Sarah Frances Mattocks, on June 15, 1893, in the

city of Chicago, state of Illinois, and that they had lived together as man and wife until on or about February 21, 1907, when he was forced to abandon her on account of her cruel and harsh treatment and improper conduct. He alleged that he was kind and affectionate and supported and maintained her, but that she was a very jealous and dictatorial woman, and that her jealousy manifested itself in fearful tirades and abuse of the petitioner; that he endured that conduct for years, until he was forced to abandon her; that she refused to visit his relatives in Texas, where he was born and reared. He further alleged: "That plaintiff and defendant remained in Chicago a few years, and then went to New York City, and while in New York defendant so circumscribed plaintiff in his acquaintances and surroundings that he found it extremely difficult to engage in any kind of business for the support of himself and wife. Plaintiff finally secured a lucrative position in New York City, which required him to travel more or less. In order to minimize her outbursts of anger and have any peace whatever with her, plaintiff was compelled to pay to defendant regularly and promptly his entire salary. Whenever it became necessary for plaintiff to make a trip for his company, defendant would immediately begin her quarreling and abuses, and in many cases, in order to pacify her, plaintiff was compelled to take her with him until she became tired of being a traveling woman. After a few years, her insane jealousy grew into such an acute mania that she would not let plaintiff leave her for even an hour or two in the evening to meet the customers of his company on important business engagements. At times when plaintiff was compelled to make sudden business trips, and when it was impossible to take defendant with him, defendant would go to the extreme of having detectives shadow plaintiff. In the winter of 1903 and 1904, soon after plaintiff had arrived at the Auditorium Annex Hotel in Chicago from New York, one of the clerks at the hotel advised plaintiff that he was being shadowed by a detective, and plaintiff knew intuitively that it was his wife who was having this done and employed detectives to shadow her detective. When plaintiff returned to New York within a few days, he charged defendant with having hired detectives to watch him, but defendant denied the same with great vehemence. Plaintiff told defendant that he did not propose to be disgraced before the managers of the various leading hotels of the country, and that, if she ever again hired detectives to watch him, he would not live with her. Later, when plaintiff was in Chicago again, the detectives were again shadowing him the moment that he arrived, and plaintiff had his detectives trace her detectives to the latter's agency, and plaintiff learned confidentially from a very high and influential source that it was without question the defendant who was having plaintiff shadowed, and at that time wrote defendant a letter that she was seeking to disgrace him in the eyes of the people, and that he would not again return to her. But through the influences of defendant's family and the defendant herself having promised that she would stop spending plaintiff's salary in hiring ex-convicts, thieves, and thugs, who constitute the cheap detective service in Northern cities, to shadow plaintiff and disgrace and humiliate him, he went back to defendant and continued to try to live with defendant. That defendant did not keep her promise, and time and time and again, when plaintiff would leave New York, the detectives would follow him until it became known among plaintiff's friends and was becoming known in his business relations. Finally, on the day of the said separation, plaintiff had occasion to take two of his New York customers to Milwaukee to see the new plant of the company for which he was working, and telephoned defendant from his office that he had to go on a very hurried trip, and, when he went up to their apartments to prepare for his departure, defendant had her baggage ready, and swore that she was going also. Plaintiff argued with her and pleaded with her that it was a hurried business trip, and that he would be with men constantly, and that it meant a great deal to him in a business way, and it was impossible to take her, but she was absolutely persistent and obdurate, and plaintiff's arguments and pleadings availed nothing. She again indulged in her stubborn abuses and slanderous accusations against plaintiff until plaintiff finally told her that they had come to the parting of the ways, and that their future living together was an insult to God and humanity and a disgrace to themselves. After defendant had so treated plaintiff and forced their said separation by the said course of unkind, harsh, cruel, and tyrannical treatment toward plaintiff, and had applied to plaintiff the vilest abuses and epithets, without any cause or provocation whatever on the part of this plaintiff, defendant secretly followed plaintiff on his trips, and continued to hire detectives to shadow him. That, when plaintiff next returned to New York, he went to the apartments where he and defendant lived and removed his personal belongings only, leaving said apartments, together with the furnishings which had been placed there by plaintiff at a cost of several thousands of dollars, to defendant. From the date of their said separation up to December, 1908, plaintiff has paid to defendant the sum of $7,800 in cash and transferred to her one-half of the stock which plaintiff owned in the company of which he was an officer, on which defendant will shortly realize the sum of $10,500 in cash. After the date of their said separation and during all the time

since, defendant has continually abused and villified plaintiff to his friends, and especially to the influential men with whom plaintiff has been in a business way engaged, both in New York City and Chicago and Milwaukee and in Europe. Defendant has been since said separation first in Chicago then in New York City, but has at all times had detectives following plaintiff and has been to the office of plaintiff in Chicago on two or three different occasions, and created a great disturbance with the office force, and compelled both the employés and plaintiff to leave the office. Defendant has frequently denounced plaintiff in the most outrageous terms, and, while in the Pompeiian drinking room in the Auditorium Annex Hotel in Chicago, she swore that she would do personal violence to plaintiff on sight, and has declared on many occasions that her only mission in life was to absolutely ruin and devour plaintiff. That all the slanderous accusations made by defendant against plaintiff are false and untrue; and that said marriage relation between plaintiff and defendant still exists."

The petition was filed on April 22, 1909, and May 29, 1909, plaintiff in error filed an answer, consisting of general and special exceptions and a general denial and special pleas. She alleged that she had been a true and loving wife; that she never displayed inordinate temper or jealousy, and never refused to assist her husband in his social duties; and that the social calls, which were alleged to have been discontinued, were discontinued solely on account of his "habits of extreme and disgusting intoxication"; that he was guilty of "open and notorious conduct with women"; that she employed detectives when she first heard of such conduct to verify the reports, and she further denied specifically every allegation in the petition. On June 9, 1909, being the return term of the court for this cause, it was tried, and judgment rendered granting defendant in error a divorce. On June 22, 1909, plaintiff in error filed a motion for new trial, and on August 3, 1909, court still being in session, she filed an amended motion for new trial supported by her affidavit and that of another. Defendant moved to strike out the motions for new trial, because not filed within the time prescribed by law, and no legal excuse was given for a failure to file them within the time. The motion was sustained, and plaintiff in error excepted and gave notice of appeal. On May 28, 1910, a petition for writ of error was applied for and service had on same day.

In the amended motion for a new trial, which was filed at the same term of court at which the divorce was granted, it was alleged that negotiations were pending which would have disposed of this cause, and that defendant in error had agreed to dismiss the proceedings, in case plaintiff in error instituted divorce proceedings in Chicago, and that she had gone to that place and had employed a lawyer to file a suit for divorce, and that she had no knowledge that the divorce had been granted until she saw a notice of it in a Chicago paper of June 10, 1909, and she at once telegraphed her attorney, who on June 11th confirmed the newspaper report, and, as soon as she received particulars, she employed an attorney in Chicago, who left there on June 16th for Corpus Christi, and who, as soon as he could get the record, on June 21st, prepared a motion for new trial, which was filed on June 22d. She further alleged that she was not a resident of Texas, and that a fraud had been perpetrated on the jurisdiction of the court, in that "plaintiff was not at the time of the institution of this suit a bona fide inhabitant of the state of Texas, nor had he been since his secretaryship of the World's Fair in 1893; that during all of the years intervening between 1893 and the present year plaintiff was an inhabitant of and resident of a different state from that of the state of Texas; and in that the plaintiff was not a resident of Nueces county, within the meaning of that term as defined by law, at the time of the filing of this suit; and in that plaintiff had not resided in Nueces county six months next preceding the filing of his petition in this case, within the meaning of the term 'resident' as contemplated by law." She further alleged: "In further support of her allegation as to the nonresidence of the plaintiff in Nueces county, Tex., for the six months next preceding the filing of his said petition within the meaning of the term 'residence,' as contemplated by law, defendant alleges the truth to be, and she is ready to show, if given an opportunity so to do, that said plaintiff in addition to the apartments which he maintained in the city of New York, as hereinbefore mentioned, actually resided in the city of Chicago at the Grand Pacific Hotel from and after and during the following dates, to wit: In the year 1908 from October 2 to October 8, from November 9 to November 16, November 16 to November 23, November 23 to November 30, November 30 to December 7, December 7 to December 14, December 14 to December 21, December 21 to December 28, December 28 to January 4, 1909, January 4, 1909, to January 11, January 11 to January 18, January 18 to January 25, January 25 to February 1, February 1 to February 8, February 8 to February 9. That on leaving said Grand Pacific Hotel in the city of Chicago said plaintiff next registered at the Waldorf-Astoria Hotel in the city of New York on the 10th day of February, 1909, giving his residence as Chicago, and that he remained at said hotel in the city of New York continuously from the 10th day of February, 1909, until the 18th day of March, 1909, when he, the said John T. Dickinson, returned to his residence at the Grand Pacific Hotel in the city of

Chicago and there remained until March 20, 1909, and that thereafter he returned to said hotel on May 31, 1909, and remained there until June 2, 1909."

[1] It is provided in article 2978, Rev. St. 1895: "No suit for divorce from the bonds of matrimony shall be maintained in the courts unless the petitioner for such divorce shall, at the time of exhibiting his or her petition, be an actual bona fide inhabitant of the state, and shall have resided in the county where the suit is filed six months next preceding the filing of the suit." There can be no doubt, we think, that the statute demands an actual residence for the six months, as distinguished from a legal residence, which may be maintained in one place while actually living in another. As said by this court in Michael v. Michael, 34 Tex. Civ. App. 630, 79 S. W. .74: "It was intended by the statute not only to compel an actual, good faith inhabitancy of this state, but an actual residence in the county where the suit for divorce is instituted, upon the part of the party seeking the divorce." In construing a similar statute the Supreme Court of Kentucky in Tipton v. Tipton, 87 Ky. 243, 8 S. W. 440, held that actual residence is required. In Haymond v. Haymond, 74 Tex. 414, 12 S. W. 90, it was held that a temporary absence from the county would not affect the right to maintain the suit, but it cannot be a temporary residence when nine-tenths of the six months next preceding the filing of the suit is spent out of the county and state. The condition to which a party seeking a divorce is subjected of residence in the county for six months next preceding the filing of his petition is absolute. There is no escape from it. The residence must be actual; it must be continuous. It is not necessary that every day nor perchance every week must be passed in the county, but the bulk of the time must be passed therein.

[2] Without the residence prescribed in the statute relating to divorces, a judgment procured would be absolutely void, and, even though it appear upon the face of the proceedings that the court had jurisdiction, yet it can be avoided for fraud in a direct proceeding brought for that purpose. McMurray v. McMurray, 67 Tex. 666, 4 S. W. 357.

In the case last cited, it was held that willful, false testimony by a party to an action in relation to a material issue is "fraud of the most pernicious character," and furnishes a sufficient ground for reopening a case. That was held in a suit brought by a wife to vacate a decree in a divorce suit which was filed nearly two years after the rendition of the judgment. The ground for the suit was false evidence willfully given by the husband on the trial of the action for divorce. It appeared from the allegations of the petition that the wife was sued for divorce on the ground of abandonment, in Live Oak county, Tex., while she was absent in Louisiana, and she was represented by counsel when the trial was had. The fact of abandonment was denied, and the Supreme Court inferred from the allegations that the evidence given by the husband was not discovered by the wife until after the close of the term at which the judgment was rendered. The court held: "It has often been asserted in this state that the district courts in the exercise of their equitable powers may grant, by re-examining the case on its merits, such relief as equity and justice may demand, when it is made to appear that a judgment has been obtained by fraud, mistake, or accident, without any want of diligence on the part of the person against whom rendered. Overton v. Blum, 50 Tex. 423." In that case the wife alleged false swearing by the husband, as was done in this case, and the court held: "That the willful giving of false testimony by a party to an action in relation to a matter affecting an issue to be tried is fraud of the most pernicious character cannot be questioned, and for such conduct it has been held that the injured party is entitled to have the cause re-examined." A number of cases were cited in support of the proposition, among the number being the case of Bell v. Walnitzch, 39 Tex. 132, wherein it was held: "It would seem that, if a judgment be obtained by fraud or false swearing, such fraud or false swearing would wholly vitiate the judgment. And where the fraud or false swearing had not been discovered before the expiration of the two days after the rendition of the verdict, or where a party, from any cause, had been prevented from setting up the fraud or false swearing as a cause for a new trial within the time prescribed by law, equity would require that he should be permitted to set up those facts in an original bill for a new trial, and, if he presented a sufficient ground to annul the judgment, a new trial should be awarded." In the last case cited a formal motion for new trial was filed within two days from rendition of judgment, and afterwards an amended motion was filed, which the court refused to consider, and it may be inferred that the trial court overruled the original motion for new trial. Afterwards "an original suit by bill in equity for a new trial" was filed in the trial court, and from the judgment therein the appeal was perfected. In the case at bar the original and amended motions for new trial were filed during the term of court at which the judgment was rendered, and they should occupy as favorable a position before a court as a bill of review filed after the final adjournment of the court. The facts set forth in this case as to the reason for not filing the motions for new trial, which are in the nature of a bill of review, were sufficient to require a hearing by the court on testimony presented by the parties, not only as to jurisdiction, but other facts of the case, and should not have been summarily dismissed

as was done by the court. If jurisdiction was obtained by false testimony as to defendant in error having been an "actual bona fide inhabitant of the state," and as to his having resided in the county of Nueces six months next preceding the filing of the suit, or if the divorce was obtained by false testimony as to the grounds alleged, as is stated in the motions, a new trial should be awarded. In order to ascertain the truth of the allegations, testimony should have been heard and judgment rendered on the motion in accord with the facts, and the motion should not have been dismissed because not filed within two days from rendition of the judgment. Under a strict enforcement of the law as to new trials, we think there were good and sufficient reasons given for a failure to file the motion within the two days, and, especially in a case where the marriage relation is involved, the court should have heard the testimony on the motion for new trial.

[3] No one testified on the trial, except the husband who was seeking the divorce, jurisdictional, as well as all other facts essential to the dissolution of the marriage tie depended upon his testimony alone, the wife was living in a distant state, and from her allegations it seems she was led to believe that there would be a postponement of the trial. The petition in the suit was filed on April 22, 1909, plaintiff in error was served with notice on May 11th, the return term began in June, appearance day being June 7th, the cause was forced to trial on June 9th, a postponement of the cause being denied, and plaintiff in error was represented by an attorney who had only been employed about two days before the trial, and who knew nothing about the facts, and was in no position to pass upon the truth or falsity of the testimony introduced by the petitioner. The court should have considered the motion for new trial, and heard testimony, if any, in support of it.

The sanctity of the marriage relation is so essential to the stability of our social and moral institutions, and is so necessary to the preservation of the home, the essential unit of government and modern civilization, that no technical rules as to judicial procedure should be allowed to interfere with its protection by the courts of the country, but it should be the aim and desire of every court to give the law that liberal interpretation that will tend to build a fortress about the marriage institution. So it has been held by the fathers of Texas jurisprudence whenever the matter was under consideration. In almost every case but those of divorce, the trial judge has no authority to disregard the verdict of a jury, and he has no power except to set it aside and grant a new trial, but in a divorce suit he has the power to render a judgment in defiance of the verdict given by a jury. Moore v. Moore, 22 Tex. 237; Haygood v. Haygood, 25 Tex. 576; Bostwick v. Bostwick, 73 Tex. 182, 11 S. W. 178; Erwin v. Erwin, 40 S. W. 53.

[4] If the evidence on the trial showed any ground for divorce, it was insane and intolerable jealousy upon the part of the wife, and the conduct induced thereby, such as keeping detectives constantly on the track of the husband, and it may be well to state that if the jealousy and its consequences were caused by the matrimonial immoral conduct of the husband, as is alleged in the motions for new trial, he would not be entitled to a divorce. In such case he would hold the remedy in his own hands; that is, by a change of his conduct. 1 Bishop, Marr., Div. & Sep. §§ 1641, 1647. He could not claim a divorce on grounds produced by his own illegal or immoral habits.

We do not deem it necessary to comment further upon the facts introduced in evidence, but will reverse the action of the court in dismissing the motions for new trial or bill of review, without a hearing on the merits, and remand the cause to the trial court with instructions to entertain and consider the motions for new trial, in connection with such facts, if any, as may be produced in evidence by the parties as to the truth or falsity of the jurisdictional and other facts introduced on the original trial.

Reversed and remanded.