**ELDRIDGE v. ELDRIDGE et al.　(No. 7087.)**

(Court of Civil Appeals of Texas. San Antonio. Feb. 6, 1924. On Motion for Rehearing, Feb. 27, 1924.)

**1. Divorce ☞167—Decree not set aside because granted within 30 days after filing of suit.**

A divorce will not be set aside after the husband has remarried on the ground that the divorce was granted before the expiration of 30 days after the suit was filed in violation of Vernon's Sayles' Ann. Civ. St. 1914, art. 4632, at the instance of the wife who brought the suit and was granted the decree, in action brought by wife four years after decree was rendered.

**2. Courts ☞37(3) — Party invoking cannot question jurisdiction.**

The party who invoked the aid of the court cannot be heard to question its jurisdiction.

**3. Judges ☞24 — Chancellor invested with broad discretion.**

The chancellor is invested with broad discretion in the exercise of his functions.

**4. Equity ☞65(1)—Complainant must come with clean hands.**

A court of chancery is a forum where conscience must rule and where those who ask relief must come with clean hands to obtain nothing but right and justice.

**5. Pleading ☞53(1)—Inconsistent allegations permitted in different counts.**

Inconsistent allegations are permitted in the different counts of a pleading.

**6. Pleading ☞53(1)—Destruction of one independent count need not affect another.**

Each count must be based on its own allegations, and the destruction of one independent count need not affect the validity of another.

**7. Equity ☞3—Equity will refuse aid where it would usurp appellate jurisdiction.**

Equity will refuse its aid in cases where action granting aid would amount to a usurpation of appellate jurisdiction, or granting another opportunity to do that which should have been done when the cause was originally presented upon its merits.

**8. Equity ☞13—Equity may be invoked to prevent retention of unconscientious advantage.**

Whenever it appears that a cause has not been heard upon its merits through no fault of the complaining party, and to prevent the retention of an unconscientious advantage obtained by the opposing party, through his fraud or through some excusable mistake or unavoidable accident on the part of the complaining party, the beneficent power of equity will be exerted to undo the wrong.

**9. Judgment ☞443(1)—Judgment obtained by fraud or concealment may be vacated by equity.**

Generally a judgment, either of a legal or an equitable tribunal, may be in effect vacated by a court of equity if obtained by fraud or concealment of facts which, if known, would have prevented the rendition of the judgment, where complainant has been diligently seeking relief and there has been no negligence or fault on his part.

**10. Judgment ☞443(1) — Judgment procured by husband unjust to wife will be set aside.**

Where husband procures a judgment unjust to wife through fraud, concealment, or misrepresentation, the judgment will be set aside by equity.

**11. Equity ☞87(1)—Rule as to laches, stated.**

Equity will usually measure the laches of a complainant by the statute of limitations which would prevail in a court of law; but such rule is not invariable, and a chancellor, under an unusual set of circumstances, may deem it

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

inequitable to permit a suit even when not barred by the appropriate statute, of limitations, or might permit the suit to be prosecuted even after barred by limitation.

**12. Equity ☞87(1)—Statutes of limitations apply to suits.**

Statutes of limitations apply to equitable actions.

**13. Divorce ☞254—Wife held not precluded by laches from suing to set aside judgment dividing property.**

Where husband procured judgment, dividing the community property, by fraud and concealment of the real facts as to the property, the wife's action to set aside the judgment, brought within four years after the judgment was rendered, but within one year after the discovery of the fraud, was not barred by laches.

**14. Divorce ☞249(2)—Wife's agreement as to partition of property may be set aside for fraud.**

In wife's divorce action, wife's agreement to accept that portion of the community property set apart for her does not preclude a court from reopening the matter on a showing that the agreement upon which the partition of the property was based was obtained by the husband through fraud and misrepresentation.

**15. Divorce ☞249(2)—Wife's agreement in divorce case as to division of community property set aside.**

Wife's agreement as to division of property obtained in divorce case by misrepresentation by husband and son that the husband was insolvent will be set aside by equity, where the community estate was of a complicated nature and neither the wife nor her attorneys could learn the true financial condition of the estate.

**16. Divorce ☞254—Insufficiency of one count to state ground for relief held not to affect other.**

In wife's action against divorced husband, the fact that one count of the petition attacking the validity of the divorce decree did not state a ground for equitable relief did not affect the validity of other count seeking to set aside that portion of the decree as to division of community property.

**17. Statutes ☞117(1)—Title of statute prohibiting granting of divorce within 30 days after suit filed held sufficient.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4632, prohibiting the granting of a divorce within 30 days after suit is filed, *held* not violative of Const. art. 3, § 35, requiring the subject of an act to be stated in the title.

**18. Statutes ☞105(1)—Requirement as to subject and title liberally construed.**

Const. art. 3, § 35, requiring the subject of an act to be stated in the title, will be liberally construed.

**19. Divorce ☞254 — Wife's petition to set aside decree dividing community estate held sufficient.**

In wife's suit to set aside that part of divorce decree dividing the community estate on the ground that husband obtained wife's agreement thereto by fraud, the mere allegation that the wife did not receive one-half of the community property *held* to state a prima facie case, since it must be presumed that she would not have given the husband from whom she was seeking a divorce a part of her half of the community property.

**20. Pleading ☞216(2)—Pleading on demurrer tested by allegations.**

A pleading, on demurrer thereto, must be tested by its own allegations.

**21. Pleading ☞34(3)—Every intendment resolved in favor of pleading on demurrer.**

On general demurrer every intendment must be resolved in favor of the pleading demurred to.

*On Motion for Rehearing.*

**22. Divorce ☞254 — Wife's petition to set aside decree dividing community estate held to state ground for relief.**

In wife's action to set aside that part of divorce decree dividing the community estate on the ground that the husband procured her agreement to such division by fraud, an allegation that the husband, with intent to deprive the wife of a portion of her one-half of the property, placed a portion thereof in trust for children with the intent to have the trust canceled after the divorce so as to invest the husband with title of the property, *held* sufficient to state cause of action entitling wife to relief.

Appeal from Fifty-Seventh District Court, Bexar County; R. B. Minor, Judge.

Suit by Mrs. Ellen Eldridge against W. T. Eldridge and another. From an order sustaining a general demurrer to the petition, plaintiff appeals. Reversed and remanded, with instructions.

Bryan, Dyess & Colgin, of Houston, and Ball & Seeligson and C. W. Trueheart, all of San Antonio, for appellant.

H. M. Garwood, of Houston, R. J. Boyle, of San Antonio, and C. R. Wharton, of Houston, for appellees.

FLY, C. J. This suit was instituted by appellant against W. T. Eldridge and Abbie Eldridge, with whom he had contracted marriage, to set aside a judgment of divorce and division of property granted to appellant and W. T. Eldridge, on May 24, 1917, that he be required to file a full and complete inventory of all community property belonging to appellant and said W. T. Eldridge, for alimony pending this suit, for a divorce between them and a judgment for one-half of all the community estate, and the appointment of a receiver. A general demurrer was sustained to the petition, from which order this appeal has been perfected.

The demurrer was sustained to the second amended petition, which is divided into two counts. The first count seeks a nullification of the judgment of divorce, on the ground that the suit was filed on April 24,

1917, and the divorce and division of property were granted on May 24, 1917, less than 30 days after filing the petition for divorce.

In the second count, among other things, it is alleged as follows:

"That plaintiff in cause No. B–14124, being also plaintiff herein, asked in her petition in said cause for a division of the community estate between herself and defendant W. T. Eldridge, and also asked that the court require said defendant W. T. Eldridge to file a full and complete inventory of the said community estate; and in compliance with said request the court, on the 25th day of April, 1917, ordered the said defendant to file said inventory before the first day of the next regular term of said court, which convened June 4, 1917, said order, however, being merely the carrying out of a written agreement made between the parties through their respective attorneys, dated April 23, 1917.

"That said defendant did not at any time comply with the said order and agreement with reference to the filing of inventory, but that he did through his attorneys, during the pendency of said cause, deliver to the plaintiff's attorneys certain statements, some sworn to and some not sworn to, including what purported to be trial balance of the properties and affairs of the said defendant, dated March 31, 1917, which was signed and sworn to by him; that plaintiff was wholly unfamiliar with the community property owned by herself and said defendant, and same was and had been throughout the married life of plaintiff and defendant wholly managed and controlled by said defendant, and he did not at any time advise or inform her as to the condition or value of said estate; that said estate was of a very complicated nature, consisting of stock and other interest in companies of various and sundry kinds, being chiefly industries in and about Sugarland, Ft. Bend county, Tex., and most, if not all, interlocking interests and of such nature and character that one not familiar therewith could not comprehend or understand same; that the statements furnished by defendant as aforesaid were of such a complicated nature and character that neither plaintiff nor her attorneys were able to learn therefrom the true financial condition of the community estate; that, as plaintiff has since learned, said statements were not in fact true and correct, but were false and incorrect, and did not truly, fairly, and properly present and show the condition of the community estate, and especially did not show many valuable properties and stocks belonging thereto, including, among others, a tract or parcel of land situated near the Ship Channel in Harris county, Tex., and generally known as Ship Channel lots, the value of which is to plaintiff unknown, and did not include the entire capital value of the Sugarland Railway Company, by the sum of $500,000, and did not show the Faber Plantation or stock of Faber Planting Company or Faber Mercantile Company, the value of which is to plaintiff unknown, all of which belong to the said community estate and were and are of considerable value as compared to the total value of said estate; that said statement further did not show certain properties theretofore conveyed by said defendant to W. T. Eldridge, Jr., as trustee, which were so conveyed for the purpose of defrauding plaintiff, as hereinafter alleged; that said statement was also false and fraudulent in that it showed the defendant W. T. Eldridge, in dire financial straits and by reason of the omission of the foregoing items, showed his total assets to be worth little, if anything, above his liabilities; that said statement was so falsely and fraudulently made for the purpose of deceiving plaintiff, and did deceive and mislead her, as she and her then attorney relied upon same so far as they were able to understand and comprehend same; the plaintiff being financially unable to incur the expense and cost necessary to have said property and affairs of plaintiff and defendant investigated and the value thereof ascertained by an expert accountant.

"That while plaintiff and defendant in said cause No. B–14124 were negotiating, during pendency of the cause, for a settlement of their property rights, defendant W. T. Eldridge personally and verbally represented to plaintiff that the community estate was insufficient to pay off the community debts, and that said estate was insolvent, and in effect that if plaintiff continued the prosecution of her suit it would result in the collapse of the industries involved in said estate, and not only the plaintiff would get nothing but their children would be rendered bankrupt and insolvent; that said representations were also made to plaintiff by her son, W. T. Eldridge, Jr., who was also the son and was the agent of the defendant W. T. Eldridge, and similar representations were also made to plaintiff by the defendant's attorney in said matter; that in a letter of date May 17, 1917, the said attorney represented to plaintiff and to her attorney, Geo. R. King, in effect and substance that the said defendant was insolvent, and that, unless a settlement was made according to the proposition submitted by the said defendant to plaintiff, the said defendant would turn his property over to his creditors; that all of said representations were false and fraudulent and were made for the purpose and with the intent of deceiving the plaintiff and of inducing her to accept the offer of settlement which the defendant was then urging her to accept.

"That plaintiff relied upon all of the aforesaid representations and, wholly and solely relying upon said representations, and believing that their children, especially the daughters, had been amply and permanently provided for by the transfer and setting aside to them in trust of a very considerable portion of the community property as hereinafter set forth and upon which said transfer plaintiff relied as a material inducement and consideration, this plaintiff was induced to withhold from thorough investigation of the correctness of the statement furnished her as aforesaid, and was induced to and did in fact agree to accept from defendant in settlement of her interest in the community property of herself and said defendant, the sum of $21,000 or its equivalent in personal property, which was upon the further reliance and conditioned that a valid and binding decree of divorce should and would be rendered in said cause.

"That in compliance with such agreement reached between the parties in said cause, conditioned upon a valid decree of divorce being rendered but not in contemplation or agreement that said parties would permanently separate

and live apart without divorce, upon hearing of the divorce suit, it was stated to the court by counsel for both parties that the parties had agreed upon a settlement and adjustment of their property rights, which under such agreement was to be incorporated in a decree if the court granted a divorce; that there was no testimony presented to the court by which it could determine anything as to the value of the community property or make a division of the community estate.

"That in accordance with said agreement and in connection with the purported order of the court attempting to dissolve the bonds of matrimony between the plaintiff and defendant, there was also entered a purported judgment on the same date, to wit, May 24, 1917, which was in fact, however, nothing more than the agreement of the parties, the substance and effect of which was that plaintiff should recover from defendant, besides costs, the sum of $2,500 as attorney's fees, and that defendant was to pay plaintiff $21,000, or its equivalent in value in personal property, in full settlement and satisfaction of her interest in the community estate, $1,000 of which was to be and was in fact paid in cash about the time of the entry of said decree, and twenty first mortgage gold bonds of the Sugarland Railway Company, each for the sum of $1,000; that in accordance with said agreement, the defendant took up and paid for three of said bonds, paying the interest when and as same accrued, and on or about the 11th day of May, 1920, plaintiff and defendant agreed to cancel and annul said arrangement with reference to said bonds, and defendant paid plaintiff the further sum of $7,000; and for the balance or remainder of $10,000 defendant delivered to plaintiff one certain negotiable promissory note for said amount, payable to her order, dated May 10, 1920, payable on or before 10 years from its date, which said note was signed and executed by W. R. King and indorsed by said W. T. Eldridge, and which has since been fully paid; that said decree of divorce, including the property settlement aforesaid, was prepared by the defendant's counsel in advance of the hearing before the court, and in so far as it attempted to divide the community estate of plaintiff and defendant, it was wholly and solely based upon the agreement between them, and was not in truth and in fact the judgment of the court, but merely an agreement of the parties, and cannot be given the force and effect of a judgment of the court.

"That plaintiff, within about a year prior to the filing of her original petition in this cause, on, to wit, March 4, 1921, which petition sets up this same cause of action, learned that the representations aforesaid made by the defendant, his agent and attorneys, as to the condition of the community estate, were in fact false and untrue, and that the representations aforesaid were falsely and fraudulently made to plaintiff and her attorney in said suit, for the purpose of inducing her to abandon her suit for an adjustment of the community affairs between herself and her said husband, and to induce her to accept the compromise which she finally accepted as incorporated in the decree of divorce as aforesaid, when in truth and in fact the community estate at the time of said representations and transactions was thoroughly solvent, and of a net value, exceeding all liabilities, of at least $750,000, but which fact was then unknown to plaintiff, and she had no manner or means of ascertaining the facts relative thereto, same being fraudulently concealed from her by defendant.

"Plaintiff would further allege that when defendant W. T. Eldridge determined upon and pursued a course of conduct that would make their further living together as man and wife insupportable, and that would drive plaintiff, despite her aversion thereto, to the institution of a divorce proceeding against him, the said W. T. Eldridge began to arrange his business affairs so as to conceal from the plaintiff and her attorneys the real extent and value of his estate, and, as a part of his scheme to that end, executed a deed of conveyance to W. T. Eldridge, Jr., as trustee, of date May 13, 1915, a copy of which is hereto attached and marked 'Exhibit A' and made a part hereof, whereby the said W. T. Eldridge conveyed a very considerable part of the community property and estate to the said W. T. Eldridge, Jr., in trust for the use and benefit of the children of plaintiff and defendant, to wit, W. T. Eldridge, Jr., Miss Ivy Eldridge, and Mrs. Ethel Woodal, and that the entire property described in said trust deed to W. T. Eldridge, Jr., stood in the name of W. T. Eldridge, Jr., as trustee, at the time plaintiff instituted suit against the said W. T. Eldridge in cause No. B–14124, and continued to stand in the name of W. T. Eldridge, Jr., at the date of the aforesaid property settlement and purported decree of divorce in said cause; that plaintiff was induced to believe, and did then believe, that said property as described in said transfer, all being community property of plaintiff and defendant, was in good faith set aside in trust for the permanent support and maintenance of the children of plaintiff and defendant, especially their daughters, and relying thereupon was one of the main inducements to plaintiff in the agreement by her of the settlement hereinbefore set forth.

"That it was throughout the fraudulent scheme and intention of the said W. T. Eldridge to procure from the said trustee, W. T. Eldridge, Jr., and from the beneficiaries under said trust deed, a reconveyance of said property to the said defendant after the property rights of said defendant and this plaintiff had been adjudicated or settled, by a compromise between them, but which fact was not then known to plaintiff; that after said purported divorce decreed between plaintiff and defendant, the said defendant, in pursuance of his said fraudulently formulated plan which existed prior to and from date of said purported divorce between plaintiff and defendant, did procure from the said W. T. Eldridge, Jr., as trustee, and from each of the beneficiaries under said deed of trust except this plaintiff, a relinquishment of all their rights under and by virtue of said conveyance to said W. T. Eldridge, Jr., the net result being that by virtue of said fraud the said defendant W. T. Eldridge placed the title of a very considerable part of the community estate of himself and this plaintiff of the approximate value of $670,800 in the name of said trustee, where said title remained until after said purported decree of divorce and property settlement was rendered, when in the carrying out of his fraudulent scheme, he had said property reconveyed to him, and has thereafter claimed same as

his own separate property and has denied this plaintiff right, title, and interest to any part thereof; and, as a consequence, all of said property covered by said trust deed, which property was and is of the approximate value of $670,800, was left out of consideration by plaintiff in the aforesaid settlement with the defendant, being induced by defendant's said fraudulent representation and scheme to believe that said community property had been in good faith and permanently set aside in trust for the use and benefit and for the support of their children, especially their daughters, and plaintiff would not have made such settlement if such properties had been considered among the assets of the community estate as they should have been, because of the said fraud of defendant in such purported transfer.

"That plaintiff offers to fully account for all that she received under the said fraudulent settlement, and here tenders, and will make actual profert upon trial hereof, of the full amount of money received."

It was also alleged that appellant was an actual bona fide inhabitant of Texas, and had been for more than 12 months before filing the suit, and had been a resident of Bexar county for more than 6 months next before the suit was filed; that appellant and W. T. Eldridge were married in 1891 and lived together until July, 1911, when said appellee began a course of cruel, harsh, and vexatious treatment of appellant such as to render living with him insupportable to appellant; that they had accumulated property of value in excess of $4,000,000 which is described; that several years after the purported decree of divorce W. T. Eldridge had attempted marriage with Abbie Masterson, the latter having in good faith entered into the marriage, and has continued to live with him as his wife.

[1, 2] In article 4632, it is provided, among other things, that a suit for divorce "shall not be heard or divorce granted before the expiration of thirty days after the same is filed." The allegations show that the divorce decree assailed by the petition was granted before the expiration of 30 days after the petition for divorce was filed, and this is pleaded as rendering the judgment null and void. The allegations show that appellant was the plaintiff and was the active agent in obtaining a judgment in her favor before the 30 days had expired. The pleadings show that both parties acted in good faith in regard to the judgment of divorce, and that acting upon its vitality and legality in severing the marriage relation between the parties, an innocent woman, in good faith, assumed the relation of wife to the husband from whom the former wife had obtained a decree of divorce. It would give sanction to rank injustice and fly in the face of public policy to hold that the plaintiff in that case, who obtained that divorce and made it possible for her former husband to marry again, should be permitted to plead her own acts in obtaining a judgment and be given a decree of its invalidity, and destroy the reputation and happiness of an innocent woman. That decree of divorce was granted in 1917, and the attack upon it was begun in 1921, about four years after it was rendered. Such a suit is inequitable and unjust, and should not be sustained on grounds of public policy. If the facts are as alleged in the petition, the procuring of the decree of divorce was the perpetration of a fraud upon the jurisdiction of the court, to which fraud both of the litigants were parties. Both were actively engaged in obtaining the divorce, and the fraud upon the jurisdiction of the court was mutual, and, as said by this court in the well-considered case of Moor v. Moor, 63 S. W. 347:

"Neither of the parties can complain of mutual fraud upon the court. The party who invoked the aid of the court cannot be heard to question its jurisdiction."

See, also, Guerra v. Guerra (Tex. Civ. App.) 213 S. W. 360; Wagley v. Wagley (Tex. Civ. App.) 230 S. W. 493.

[3, 4] The aid sought in the petition must come through the medium of a court of equity, where the appeal must be directed to the conscience and moral nature of the chancellor, who is invested with a broad discretion in the exercise of his functions. A court of chancery is a forum where conscience must rule and where those who ask relief must come with clean hands to obtain nothing but right and justice. Equity tempers and mitigates the rigors of the law, and its decrees are based on good faith, upright conduct, and righteous dealing. It relieves the rigor and harshness of the law because the supplicant at its altars has been wronged, without having wronged any one, has been sinned against, without having sinned, and to whom the law in its sternness can give no relief. But the court of chancery extends its relief only to the worthy and those whose conduct has not deprived them of the right to enter a tribunal dedicated to honor and uprightness. It demands that a suitor seeking relief shall have given the same equity to his adversary that he is seeking for himself, and has not violated conscience or good faith, or any other principle of equity. The pleadings in this case are addressed to the chancellor rather than to the judge, and must be viewed in the light of the principles enunciated, and in their light it would seem inequitable and unconscientious to destroy a judgment of divorce as to the rendition of which appellant was the moving cause, and was an active, vigorous party to it. She has come into a court of chancery praying for destruction of a judgment which she procured, and whose nullification would bring about results injurious to innocent persons, and would be subversive of public policy. This

is addressed to that part of the judgment relating to the divorce, and not to that part alleged to have been procured through fraud.

The provision as to 30 days' stay between the filing of a petition for a divorce and the judgment was enacted not only for the protection of the defendant, but also that there might be time for reflection and a change, of purpose and desire on the part of the plaintiff. It was to offer a month for the cooling of temper, in the hope that marital troubles might be smoothed out and a divorce prevented. The provision in question failed to accomplish the legislative design, for after seven years she is still seeking a divorce. The doctrine of estoppel will not permit her to fly in the face of public policy and the rights of third parties, and destroy a judgment which she procured and acted on for years.

The case of McConkey v. McConkey (Tex. Civ. App.) 187 S. W. 1100, is relied upon by appellant to show that the remarriage of one of the parties to a judgment of divorce does not estop the other party from attacking such judgment. The facts of that case are not similar to the facts in this case. In that case the party attacking the judgment was the defendant in the divorce suit, and she assailed the judgment in a few weeks after its rendition, alleging a clear case of fraud. She showed diligence in attacking the judgment as soon as she ascertained that it had been rendered. The man in that case married another woman, in two months after the judgment was obtained, and while a suit to set aside the judgment was pending, and her position certainly cannot be weighed in the scales with a woman who married the divorced man several years after the divorce was granted. Ordinarily the woman who uses such haste in contracting marriage with a divorced man has no standing in a court of equity. She deserves sparse consideration. Neither in this case, nor in any other in which a judgment of divorce was set aside after the marriage of one of the parties, was the party attacking the validity of the judgment a party to the fraud.

[5, 6] Setting aside the first count in no way militates against the allegations in the second count. Even though it be held that the divorce must, in the light of all the circumstances, be held valid, still that fact would not give license to the erstwhile husband to overreach the wife and defraud her out of her legal portion of the community estate, if proper diligence appears in seeking relief from such fraud. Inconsistent allegations are permitted in the different counts of a pleading, and it would follow that each count must be based on its own allegations, and the destruction of one independent count in a pleading need not affect the vitality of another count. Floyd v. Patterson,

72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; Harris v. Warlick (Tex. Civ. App.) 42 S. W. 356.

[7-10] We take up consideration of the second count, keeping in view the principle controlling in courts of chancery, that equity will refuse its aid in cases where action granting aid would amount to a usurpation of appellate jurisdiction or granting another opportunity to do that which should have been done when the cause was originally presented upon its merits. Whenever it appears that a cause has not been heard upon its merits through no fault of the complaining party, and to prevent the retention of an unconscientious advantage obtained by the opposing party, through his fraud or through some excusable mistake or unavoidable accident on the part of the complaining party, the beneficent power of equity will be exerted to undo the wrong. It is the general rule that—

"A judgment either of a legal or of an equitable tribunal, may be, in effect, vacated by a court of equity, if it was obtained by fraud." Freeman on Judgments §§ 489 and 491.

Concealment of facts which, if they had been known, would have prevented the rendition of the judgment, is always a good ground for entering an equitable tribunal to obtain relief. Especially is this true in a case where the husband procures a judgment unjust to his spouse through fraud, concealment, or misrepresentation. The concealment of a material fact is looked on with abhorrence when employed to obtain an unjust judgment, and if any considerable degree of diligence is used in regard to the matter the judgment will be annulled. It has been held that in the management of a case the parties are bound to such a degree of diligence "as is requisite in the ordinary business of life," and no attack upon the validity of a judgment based on fraud can be entertained, unless the complainant shows that by the exercise of reasonable diligence he could not have escaped injury inflicted by the fraud. A court of equity has power to grant relief from injury from a judgment procured by fraud or concealment, but such power will not be exercised unless it is shown by the complainant that his appearance in a chancery court has not been caused by his negligence. Diligence must be associated with merit, and he who seeks equity must show that the judgment was obtained by fraud, accident, or concealment, on the part of his opponent, and that there has been no negligence or fault on his part. Nevins v. McKee, 61 Tex. 412. With the statement of these essential principles, we proceed to apply them to the allegations of the second count of the petition.

The judgment, of which complaint is made, was rendered on May 24, 1917, and the original petition was filed on March 4,

1921, which was less than four years, and, according to the allegations in the petition, in less than a year after the discovery of the fraud.

[11-14] It is the usual rule in courts of equity to measure the laches of a complainant by the statute of limitations which would prevail in a court of law. However, this is not the invariable rule, and a chancellor, under an unusual set of circumstances, might deem it inequitable to permit a suit even when not barred by the appropriate statute of limitations, or might permit the suit to be prosecuted even after barred by limitation. Pomeroy, Eq. Jur. vol. 5, § 20; San Antonio National Bank v. McLane, 96 Tex. 48, 70 S. W. 201; Watson v. Railway (Tex. Civ. App.) 73 S. W. 830. It is the Texas rule that the statute of limitations shall apply to equitable actions, and it was laid down by Judge Sanborn, now a Justice of the Supreme Court of the United States, in the case of Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14, that—

"When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches."

This suit was undoubtedly instituted within four years after the time the fraud was perpetrated, and necessarily within four years after it was discovered, and the question of laches has no place in regard to the fraud alleged in obtaining the judgment of partition of the community estate. We hold, therefore, that no question could arise as to laches, even though the allegations failed to show grounds for the delay in bringing the suit. In this case, however, the circumstances pleaded show that by concealment of the real facts as to the community property, and certain acts and misrepresentations as to the value of the estate and the amount of indebtedness, a woman, who was at the time the wife of the defendant in the divorce suit, was induced to make an agreement as to a division of the estate which entered into and became a part of the judgment now being assailed. Her agreement to accept the amount set apart cannot prevent a reopening of the matter, when it is made to appear that appellant was led into the agreement, upon which the partition of the property was based, through fraud and misrepresentation. 2 Pomeroy, Eq. Jur. § 919.

[15] The allegations show that W. T. Eldridge, the husband, and W. T. Eldridge, Jr., the son, represented to appellant that the estate was insolvent, that the estate was of a complicated nature and appellant could not ascertain the true condition thereof, that she nor her attorneys could learn the true financial condition of the community estate, and she has since learned that the statements were untrue and did not truly and fairly present the true condition of the estate. These allegations are followed by others which present a clear case of fraud and concealment.

[16] The two counts of the petition are separable and the destruction of one does not invalidate the other. A similar action was sustained in the case of Celli v. Sanderson, 207 S. W. 179, by the Galveston Court of Civil Appeals, and a cancellation of that part of the divorce decree dividing the community estate was sustained, while the divorce decree was left intact. Pleadings of fraud inducing the division of the property, no more cogent than those in this case formed the basis for the judgment of that court.

[17, 18] We think there is no merit in the contention of appellees that the 30-day provision in article 4632, Vernon's Sayles' Ann. Civ. St. 1914, is unconstitutional. There was no infringement of the constitutional provision that the caption of an act shall name the purposes of the act. The amendment as to the 30 days was clearly germane to the subject of the amended article. Mortgage Co. v. Hardy, 93 Tex. 289, 55 S. W. 169. As said by the Supreme Court in that case:

"The object of the requirement that the subject of an act should be stated in its title is simply to direct attention to the subject to be legislated upon. Such subject is sufficiently indicated when the title gives the number of an article of the code in which it is included."

In the amendatory act of 1913 (chapter 97) the title was:

"An act to amend article 4632 of chapter 4, of the Revised Civil Statutes of the State of Texas, relating to the granting of divorces, and declaring an emergency."

This was a sufficient compliance with article 3, § 35, of the Constitution. It is the uniform rule in Texas to liberally construe the provision in question.

In the cases of Beeler v. Beeler (Tex. Civ. App.) 218 S. W. 553, and Snow v. Snow (Tex. Civ. App.) 223 S. W. 240, it was held that a judgment of divorce rendered in less than 30 days after the filing of the petition was void. In both of those cases the defendant acted in a short time after rendition of the judgments to set them aside, and no innocent parties were involved. No question of estoppel arose in those cases, as in this.

The question might arise as to whether any circumstances could be proven that would estop a party from attacking a void judgment obtained and acted on by him, but that question has been affirmatively answered by the courts of Texas, the Supreme Court of the United States, and other state courts. Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187; Nichols v. Nichols, 25 N. J. Eq. 60; Irrigation Co. v. Middaugh, 12 Colo. 434, 21 Pac. 565, 13 Am. St. Rep. 234; Moor

v. Moor (Tex. Civ. App.) 63 S. W. 347. In the case last cited, which was decided by this court and approved by the Supreme Court, the judgment of divorce was attacked on the ground that neither the party who secured it nor the defendant were residents of Texas, at the time the divorce was granted. This court held:

"That, if the decree was fraudulently obtained, he participated in the fraud, and was in active collusion therein with appellee for the purpose of obtaining the divorce."

The decree of divorce was sustained. If a party is estopped from setting up his own fraud, in falsely claiming residence which he did not have in a state to obtain a divorce, it must be held that he would be estopped to set up such fraud in regard to the 30-day clause of the statute, especially where a third party would be greatly wronged by such attack on the judgment. It has been held that a divorce was void where the plaintiff was not a resident of the state. Dickinson v. Dickinson (Tex. Civ. App.) 138 S. W. 205. As said by the Supreme Court of the United States, in the cited case of Daniels v. Tearney:

"The principle of estoppel thus applied has its foundation in a wise and salutary policy. It is a means of repose. It promotes fair dealing. It cannot be made an instrument of wrong or oppression, and it often gives triumph to right and justice, where nothing else known to our jurisprudence can, by its operation, secure those ends."

The judgment as to the property affected no one but appellant and appellee W. T. Eldridge. The rights of no third party will, under the allegations, be affected by a vacation of the judgment, and we can see no reason in not applying to the judgment based on an agreement procured by fraud the same rules as have been applied to contracts not embraced in the judgment. Moor v. Moor, herein cited; Cox v. Mailander (Tex. Civ. App.) 178 S. W. 1012; Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 442; Kuehn v. Kuehn (Tex. Civ. App.) 232 S. W. 918; Prince v. Frost (Tex. Civ. App.) 250 S. W. 785. The last three cases are directly in point in this case. In the Swearingen Case a divorce was granted and by a settlement by agreement of the parties the community property was embodied in the decree. The divorce was not set aside, but the decree as to the community estate was set aside and the property equally divided between the former husband and wife. The judgment was rendered on allegations and proof of fraud upon the part of the husband in obtaining an agreement from the wife, so as to deprive her of her just proportion of the community estate. A writ of error was refused in the case. The able and exhaustive opinion in the case of Kuehn v. Kuehn was delivered by the late great Chief Justice of the Austin Court of Civil Appeals, Judge W. M. Key. His opinion is peculiarly appropriate to the facts alleged in this case, and in closing his opinion Judge Key held:

"Our holding that in dealings between husband and wife, and those holding under the husband and not protected as innocent purchasers, the courts will protect the right of the wife to one-half of the community property, or its equivalent, renders the question of agency of no importance. In other words, if as a result of the transactions involved in this case R. W. Kuehn obtained from his wife, for a grossly inadequate consideration, her moiety of the community property, the courts will disregard the contract of settlement and the deeds made by her in pursuance thereof, and enter whatever decree may be necessary to fully protect her rights. This being the case, it is immaterial what representations were made, nor by whom made, in order to induce Mrs. Kuehn to pursue the course she did."

[19-21] So in this case if, as alleged, appellant did not receive one-half of the community property belonging to her, a prima facie case is stated, for even without fraud being alleged it must be presumed that no woman would give to a husband a part of her half of the community property, when she is seeking a divorce from him. A statement that she did so stamps the transaction with suspicion. The law gave the appellant one-half the community property, and if she did not, in the partition between her and her then husband, get that half or its equivalent, she is entitled to the balance. The allegations are sufficient to show that she was deprived, through the acts of her husband and son, of her just portion of the estate, and a lack of diligence on her part is not disclosed by the petition. The pleading must be tested by its own allegations, and when assailed through a general demurrer every intendment must be resolved in favor of it.

The judgment is reversed and the cause remanded, with instructions to the lower court to strike out the first count of the petition and proceed to a trial of the issues as to fraud in the division of the community estate, as alleged in the second count, or as it may be amended in harmony with the opinion in this case.

On Motion for Rehearing.

The alleged conflict of the opinion of this court with those of the Supreme Court, pointed out in appellees' motion for rehearing, are fanciful and unfounded, and probably intended more for the Supreme Court as jurisdictional matter on an application for a writ of error, than for this court.

[22] The motion filed by appellant is without merit, except possibly wherein it criticizes our opinion in failing to clearly pass on her ninth assignment of error. We intended to convey the idea that the second count of the petition was sustained in all

its allegations of fraud made therein. One of those allegations is in regard to an attempted donation by W. T. Eldridge to W. T. Eldridge, Jr., ostensibly in trust for him and his two sisters, but really to deprive appellant of her one-half of the property so placed in trust, and with the intention to have the trust canceled after the divorce so as to invest W. T. Eldridge with title to the property. Those allegations are sufficient, and if proved would constitute a ground for setting aside the judgment. The ninth assignment of error is sustained.

With the exception noted, the two motions for rehearing are overruled.